**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| CHARLOTTE-MECKLENBURG ) <br> BOARD OF EDUCATION, d/b/a ) <br> CHARLOTTE-MECKLENBURG ) <br> SCHOOLS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DISABILITY RIGHTS OF ) <br> NORTH CAROLINA, ) <br> ) <br> Defendants. ) | Case No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT AND JUDICIAL REVIEW

### OVERVIEW

Plaintiff Charlotte-Mecklenburg Board of Education (hereinafter referred to as "CMBOE"), through counsel, hereby brings this Complaint for Declaratory Judgment against Disability Rights of North Carolina (hereinafter referred to as "Defendant"), and requests this Court to determine the limits of Defendant's authority in accessing students' Personally Identifiable Information (PPI), which is confidential except in very limited circumstances. CMBOE brings this matter before the Court to directly challenge Defendant's assertion that is has unfettered authority to access the confidential records of every student in a particular school based on the claim that probable cause—created unilaterally from observations of Defendant's employees—exists. CMBOE is bound by federal, state, and local laws to protect and hold confidential the PPI of its students unless a statutorily defined exception exists. In support of this Complaint, CMBOE alleges the following:

1

## PARTIES

1. Plaintiff is a corporate entity whose board members are duly elected citizens of Mecklenburg County which is charged by state law with the control and operation of the Mecklenburg County public schools. Plaintiff is also known as Charlotte-Mecklenburg Schools or CMS.

2. Upon information and belief, Defendant is a private organization, receiving federal funding, with its primary offices located at 3724 National Drive, Suite 100, Raleigh, NC 27612. This organization was designated as the state's Protection and Advocacy Agency by Governor Mike Easley as of 2007. Defendant may be served by serving registered agent, Vicki Smith at the aforementioned address.

3. This is a declaratory judgment action pursuant to 28 U.S.C. § 2201 for the purposes of resolving an actual controversy between the parties, as more fully appears below.

## JURISDICTION

4. This action is brought pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 220, and jurisdiction in this action is based upon 28 U.S.C. § 1331, and is proper because Plaintiff is seeking an interpretation of 20 U.S.C. § 1232g, 42 U.S.C. § 15043(a)(2)(B), 29 U.S.C. § 794e, 45 C.F.R. § 1326.25, and 45 C.F.R. § 1326.19. The parties are subject to federal statutes and regulations which address the unauthorized disclosure of PPI of students.

## BACKGROUND

5. On or about June 7, 2017, CMBOE received a letter from Defendant, through attorney, Kristine Sullivan (hereinafter referred to as "Sullivan"), seeking confidential student information from Metro School (hereinafter referred to as "Metro") pursuant to 29 U.S.C. § 794e (f)(2), 42 U.S.C. § 15043(a)(2)(B), 45 C.F.R. § 1326.25, and 45 C.F.R.§ 1326.19. Metro is a

2

school that serves students who are all cognitively disabled. *A true and correct copy of the referenced letter is attached and hereto incorporated by reference as* **Exhibit A**.

6. The confidential student information sought by Defendant was the Individualized Education Plans (IEP) for all students at Metro, approximately 250 students, the permission or parental waiver forms given to the school that allowed use of "wheelchairs or other devices in order to support or mitigate harm to the child . . . ", or in the alternative, the names and contact information for the parents or guardians of all Metro students.

7. Defendant's letter asked that all identifying information be redacted and that the IEPs only contain information that described the use of assistive technology, restraint, and/or seclusion.

8. Defendant's letter stated "Disability Rights NC has received a complaint regarding improper use of restraint" and based on said complaint, Defendant was "conducting an investigation into student care and treatment." There were no other specifics regarding the complaint.

9. Defendant set a deadline of fifteen (15) days to comply with the demand.

10. On or about June 13, 2017, J. Melissa Woods, Counsel for CMBOE, (hereinafter referred to as "Woods") spoke with Sullivan and requested an agreement to extend the deadline to July 14, 2017. Sullivan agreed to this change.

11. On June 16, 2017, Woods and Sullivan engaged in a telephone conversation regarding the information sought by Defendant. The purpose of the conversation was to obtain clarity regarding Defendant's purported authority to access records, and to receive additional information about the alleged complaint.

12. During the June 16, 2017 conversation, Woods asked Sullivan for details about the complaint. Sullivan stated there was not a complaint from a person, but that Defendant used the term "complaint" broadly.

13. Sullivan further explained that probable cause was based on monitoring done while Sullivan visited Metro, and her observations to the following:

    a. A female student being offered a wheelchair by a staff member and the mother of the student replying that the student did not need it. Sullivan then observed this student "walk on her own." When an inquiry was made as to why an ambulatory student would be offered a wheelchair, the assistant principal of Metro allegedly replied: wheelchairs were used for ambulatory students for various reasons, including staff convenience;

    b. A male student in a Rifton chair[1] during class time. When an inquiry was made, the assistant principal allegedly replied: the chair was used to mobilize the student during class time; and

    c. "the extensive number of wheelchairs, Rifton chairs, and other devices present in Metro's classrooms that constitute a restraint.[2]

14. Per Sullivan, the information provided by the assistant principal did not represent an appropriate use of said devices, and based on the observations and comments, Defendant "thinks they have gotten to the level of probable cause."

15. Woods inquired whether Defendant would be willing to narrow their request for documents to the observed students—if said students could be identified—or students whose

---

[1] Activity Chair is intended to provide comfortable **seating** with adjustable support for children and adolescents with disabilities in the classroom or at home. http://www.rehabmart.com/product/rifton-activity-chair-r840-standard-base-medium-31780.html

[2] This information was conveyed not in the phone conversation, but in the email that was dated June 16, 2017. See **Exhibit B**.

4

parents had authorized use of assistive devices in the way Sullivan had observed; Sullivan agreed to consider the narrowing the records request.

16. Woods also informed Sullivan that CMBOE would be willing to correct any deficiencies, if they could be identified, and cooperate with any investigation.

17. Although the assistant principal who spoke to Defendant's employees during the above referenced visit admits to stating that assistive devices are sometimes used for convenience, she denies stating that "convenience" was for staff purposes.

18. The Individualized Education Plans (IEPs) for some students at Metro allow for the use of assistive technology devices, such as wheelchairs, for ambulatory students, at the student's convenience, when there is a risk of safety to the student.

19. On June 23, 2017, Sullivan sent an email to Woods refusing to narrow the request because there "was probable cause regarding **all** the students at Metro." (emphasis added). *A true and correct copy of the referenced email is attached and hereto incorporated by reference as* **Exhibit B**.

20. On July 13, 2017, CMBOE mailed Defendant the redacted IEPs of all students who were enrolled at Metro.

21. Also, on July 13 2017, CMBOE, through Woods, sent a letter, explaining why CMBOE had provided the requested documents and advising Defendant that CMBOE did not agree with Defendant's determination of probable cause. CMBOE also reiterated that Defendant was not entitled to PPI regarding every student at Metro and promised strict scrutiny of future requests. *A true and correct copy of the referenced letter is attached and hereto incorporated by reference as* **Exhibit C.**

22. On August 3, 2017, Defendant sent a letter in response to CMBOE's July 13, 2017 letter. *A true and correct copy of the referenced letter is attached and hereto incorporated by reference as* **Exhibit D**.

23. In the letter, Defendant contends it has probable cause to believe that abuse and/or neglect occurred at Metro and demanded the names and contact information for the parents or guardians of all students be provided to Defendant within three (3) business days.

24. In the letter, Sullivan claimed Woods had inaccurately recounted the telephone conversation on June 16, and denied the alleged probable cause was solely based on observations of Defendant's employees and statements by the assistant principal.

25. Although there was no new details provided, Defendant claimed there existed a report which constitutes a complaint.

26. On August 9, 2017, CMBOE sent a response to the letter dated August 3, 2017, requesting details of the complaint or report upon which Defendant based probable cause and refusing the demand for parent or guardian information because a release of this information would violate the Family Educational Rights and Privacy Act (FERPA) and CMBOE Policies. *A true and accurate copy of the letter is attached hereto and incorporated by reference as* **Exhibit E**.

27. Defendant responded on August 14, 2017, stating that Protection and Advocacy Agencies, such as the Defendant, have the final authority regarding the determination of probable cause, and are not required to disclose the basis for probable cause. *A true and accurate copy of the letter is attached hereto and incorporated by reference as* **Exhibit F**.

28. This letter, however, again stated that the probable cause for Defendant's request for the information at Metro was based on observations and "received information."

### Count 1: Declaratory Judgment regarding FERPA

29. CMBOE restates and incorporates by reference each of the preceding paragraphs.

30. The information Defendant seeks is PPI as defined by FERPA and protected by the mandates of that statute.[3]

31. FERPA provides the circumstances by which PPI can be released without parental consent.[4] Release of this information to Defendant, acting as a Protection and Advocacy agency, is not an exception set forth in FERPA.

32. The Fourth Circuit has not addressed the authority of Protection and Advocacy agencies to obtain PPI from a public school.

33. By providing the information sought by the Defendant, CMBOE would breach the rights of the students under its protection and violate federal law.

34. Due to the parties' disagreement regarding the interpretation of the confidentiality provision of FERPA and whether, or under what circumstances, CMBOE should release the information demanded by the Defendant, CMBOE requests the Court's interpretation of the Developmental Disabilities Act (DDA) and Protection and Advocacy of Individual Rights (PAIR), as those statutes relate to FERPA, and whether CMBOE is required to release the information demanded by Defendant.

### Count 2: Declaratory Judgment Regarding Probable Cause

35. CMBOE restates and incorporates by reference each of the preceding paragraphs.

36. Defendant interprets the federal statutes regarding access to records very broadly and relies heavily on authority from outside the Fourth Circuit to support its perceived powers.[5]

---

[3] 20 U.S.C. § 1232g (b)(1) et. seq.
[4] *Id*.
[5] See **Exhibit A**.

7

37. However, Defendant's authority to access records of disabled individuals is limited to three circumstances: 1) when the individual is a client; 2) when the individual is without a parent or guardian to authorize access or the individual is unable to authorize access; or 3) when there has been a complaint or probable cause exists to believe an individual has been subject to abuse or neglect. [6]

38. In an email dated June 16, 2017, Defendant admitted that the first of the three enumerated circumstance is not applicable to this matter.[7] *A true and correct copy of the referenced email is attached and hereto incorporated by reference as* **Exhibit G**.

39. The second circumstance is not satisfied because, upon information and belief, all students at Metro have parents or guardians. CMBOE therefore rejects Defendant's contention that the second condition is relevant to this matter.

40. Therefore, the only relevant condition under which Defendant could validly claim access to records at Metro is the condition which requires Defendant to receive a complaint alleging abuse or neglect or when probable cause for abuse or neglect exists.

41. Probable cause is defined as a "reasonable ground for belief that an individual with developmental disabilities has, or may be, subject to abuse [or] neglect."[8]

42. Although the Defendant continues to assert a complaint has been received, CMBOE has not been provided with any details of said complaint or report that constitute probable cause of abuse or neglect outside of what is listed in Paragraph 13 and **Exhibit F**.

43. Even assuming the assistive technology devices were being used in the manner Defendant alleges, such use does not constitute abuse or neglect.

---

[6] 42. U.S.C. § 15043 (a)(2)(I); 45 C.F.R. 1326.25(a) (1-3).
[7] See **Exhibit G**.
[8] 45 CRF 1386.19.

44. Furthermore, if a student's IEP provides for use of an assistive technology device in a way that prevents harm to the student or aids in the student's convenience, such use would not constitute an inappropriate use of said device, and therefore would not, per Defendant's definition interpretation, rise to the level of abuse or neglect.

45. CMBOE offered Defendant an opportunity to view IEPs which contained instructions specifically related to the use of assistive devices of ambulatory students, but Defendant refused to narrow its request and instead requested all redacted IEPs.[9]

46. The redacted IEPs prevented Defendant from linking particular students—who were authorized by the IEP team to use assistive technology devices for their convenience or safety—to specific IEPs.

47. A complaint related to a limited number of students does not constitute probable cause for every student in a school.[10]

48. While it "may be made based on reasonable inferences"[11], probable cause must be concrete and articulable.[12]

49. While CMBOE does not agree that the provided information meets the definition of probable cause, as it relates to the observed students, CMBOE forcefully objects to such information being used to support Defendant's contention that it has reasonable grounds to believe that "all . . . students at Metro have been or may be subject to abuse/neglect."[13]

---

[9] See **Exhibit B**.
[10] See *Wash. Prot. & Advocacy Sys. v. Evergreen Sch. Dist.*, Case No. C03-5062 FDB (W.D. Wash. 2003), (unpublished) *aff'd*, 71 Fed. Appx. 654, 2003 WL 21751827 (9th Cir. Wash), finding no abuse of discretion.
[11] 45 C.F.R. 1236.19.
[12] See *Pennsylvania Prot. & Advocacy, Inc. v. Royer-Greaves Sch. for Blind*, 1999 U.S. Dist. LEXIS 4609, at *26 (E.D. Pa. March 24, 1999).
[13] See **Exhibit F.**

9

50. While some jurisdictions have allowed Protection and Advocacy agencies access to the records of all students, these instances have been limited to circumstances where there has been serious injury or death or allegations of pervasive systematic abuses. [14]

51. Such reasoning is lacking in this case and, therefore, probable cause for obtaining the records of every student at Metro school does not exist.

Due to the parties' failure to agree upon what constitutes reasonable probable cause and whether probable, as it relates to a finite number of students, permits Defendant to obtain PPI for every student at a school, CMBOE requests the Court clarify who determines the standard for probable cause when Protection and Advocacy agencies seek access to all students' PPI.

WHEREFORE, for all the reasons set forth above, CMBOE respectfully requests that the Court issue a finding that FERPA prohibits the release of the names of all the parents or guardians of the Metro students, and that Defendant's overly broad requests lacks grounds on which to base a reasonable belief that "all students at Metro have or may be subject to abuse or neglect," and find that Defendant has not met its burden that there are reasonable grounds for obtaining parent/guardian information for all students at Metro. CMBOE further requests that the Court grant any other such relief as may be appropriate.

Respectfully submitted, this the 18th day of August, 2017.

                                              s/ J. Melissa Woods
                                              J. Melissa Woods
                                              N.C. Bar Number: 21313
                                              Attorney for the Plaintiff
                                              Charlotte-Mecklenburg Board of Education

---

[14] *See Iowa Prot. & Adv. Servs., Inc. v. Gerard Treatment Programs*, LLC, 152 F. Supp. 2d 1150 (N. D. 2001); *Disability Ctr. of Alaska v. Anchorage Sch. Dist.*, 581 F.3d 936 (2009); *Conn. Office of Prot. & Advocacy v. Hartford Bd. Of Educ.*, 355 F. Supp. 2d. 649 (D. Conn. 2005).

600 E. Fourth Street, 5th Floor
Charlotte, North Carolina 28202
Phone: 980-343-6228; Facsimile: 980-343-5739
Email: jamiem.woods@cms.k12.nc.us

s/ Andre Mayes_____
N.C. Bar Number: 14102
Attorney for the Plaintiff
Charlotte-Mecklenburg Board of Education
600 E. Fourth Street, 5th Floor
Charlotte, North Carolina 28202
Phone: 980-343-6228; Facsimile: 980-343-5739
Email: andre.mayes@cms.k12.nc.us