IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:17-cv-498

| | | |
|---|---|---|
| CHARLOTTE-MECKLENBURG | ) | |
| BOARD OF EDUCATION, d/b/a | ) | |
| CHARLOTTE-MECKLENBURG | ) | |
| SCHOOLS, | ) | |
| | ) | |
| Plaintiff | ) | DEFENDANT'S MEMORANDUM |
| | ) | IN SUPPORT OF DEFENDANT'S |
| v. | ) | MOTION TO DISMISS |
| | ) | |
| DISABILITY RIGHTS NORTH | ) | |
| CAROLINA | ) | |
| | ) | |
| Defendant. | ) | |

_____

Pursuant to Local Rule 7.1(C), Defendant files this Memorandum in Support of

Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure, and pursuant to the discretion granted to the Court under the Declaratory Judgment

Act, 28 U.S.C. § 2201.

## **INTRODUCTION**

Plaintiff, Charlotte-Mecklenburg Board of Education ("CMBOE"), brought this action

for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Defendant,

Disability Rights North Carolina ("DRNC"), is the Protection and Advocacy system ("P&A")

designated by the Governor of the State of North Carolina to provide protection and advocacy

services to individuals with disabilities. As the P&A, DRNC has the responsibility and authority

to investigate allegations of abuse and/or neglect of individuals with disabilities. By this action,

Plaintiff seeks to prevent DRNC from carrying out such an investigation at the Metro School, a

school that serves only students with disabilities, located in Charlotte, NC and operated by

Plaintiff.

DRNC received complaints regarding abuse and/or neglect of students at the Metro School. DRNC initiated monitoring activities at Metro School, during which time DRNC staff observed circumstances and received information that led DRNC to determine that it had probable cause, as that term is defined in the federal statutes and regulations governing the P&A, to believe that students at Metro School were being subjected to abuse and/or neglect, thus meriting investigation. On August 3, 2017, in furtherance of such investigation, DRNC requested in writing that Plaintiff provide it with the names and contact information of the parents and guardians of each student attending Metro School, so that written releases might be obtained, thus permitting DRNC to review student records as deemed necessary for the investigation (Compl. ¶¶ 22-23). In this request, DRNC notified Plaintiff that "[i]f the request for information is denied, Disability Rights NC will be forced to seek a court order resolving this matter." (Compl. Exhibit D). On August 9, 2017, counsel for Plaintiff notified DRNC of its decision to deny DRNC's request for parent and guardian names and contact information (Compl. ¶ 26). At that time, Plaintiff invited DRNC to provide further information regarding the basis for its probable cause determination (Compl. Exhibit E). On August 14, 2017, DRNC provided its response to Plaintiff regarding its authority to obtain the names and contact information requested – i.e. its receipt of complaints and determination of probable cause – and clarifying that Plaintiff is not entitled to a detailed recitation of DRNC's basis for its probable cause determination, as such a determination is the sole province of the P&A system. DRNC requested a response by August 16, 2017, and indicated that if the matter was not resolved by that date, DRNC would be "prepared to proceed as necessary at that time." (Compl. Exhibit F).

2

## PROCEDURAL HISTORY

Rather than respond directly to DRNC's August 14, 2017 letter, Plaintiff instead filed the present action for declaratory judgment. Specifically, Plaintiff seeks "the Court's interpretation of the Developmental Disabilities Act (DDA) and Protection and Advocacy of Individual Rights (PAIR), as those statutes relate to FERPA [the Family Educational Rights and Privacy Act], and whether CMBOE is required to release the information demanded by Defendant." (Compl. ¶ 34) (hereinafter referred to as "Plaintiff's FERPA claim"). Plaintiff further "requests the Court clarify who determines the standard for probable cause when Protection and Advocacy agencies seek access to all students' PPI [Personally Identifiable Information]." (Compl. ¶ 51) (hereinafter referred to as "Plaintiff's probable cause claim").

Plaintiff served the complaint on DRNC by registered mail, and did not otherwise notify DRNC of its actions. In the meantime, on August 23, 2017, DRNC initiated a separate action in this Court seeking declaratory and injunctive relief. Disability Rights North Carolina v. Charlotte-Mecklenburg Schools Board of Education, Civil Action No. 3:17-cv-00511. A copy of the file-stamped complaint is attached and incorporated as Exhibit A. DRNC provided counsel for Plaintiff with a courtesy copy of its complaint by email that same day. A copy of the referenced email is attached and incorporated as Exhibit B. DRNC learned of the present matter when Plaintiff provided a copy of the complaint and summons, by email, on August 24, 2017. A copy of the referenced email is attached and incorporated as Exhibit C.

Defendant has filed the accompanying Motion to Dismiss for lack of subject matter jurisdiction, and Motion to Dismiss pursuant to the discretion granted by the Declaratory Judgment Act.

## FIRST ARGUMENT: LACK OF SUBJECT MATTER JURISDICTION

Plaintiff has not established that it has standing, and therefore the Court lacks subject matter jurisdiction over this matter.

### I. Standard of Review: Rule 12(b)(1)

Where there is a question of subject matter jurisdiction, the court "may weigh the evidence in determining whether the facts support the jurisdictional allegations." Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). The court must "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

Article III of the U.S. Constitution limits federal jurisdiction to live "cases" and "controversies." U.S. Const., art. III, § 2. A crucial aspect of this case-or-controversy requirement is standing, and the plaintiff, seeking federal jurisdiction, bears the burden of establishing standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). To establish it has standing, Plaintiff CMBOE must allege (1) it has suffered an actual or imminent, concrete and particularized injury, (2) that is fairly traceable to an action by Defendant DRNC that it is challenging, and (3) that is likely to be redressed by the declaratory relief requested. Krebs v. Charlotte Sch. of Law, LLC, 2017 U.S. Dist. LEXIS 143060, *30 (W.D.N.C. Sept. 5, 2017)(citing Lujan at 561). "Where a plaintiff does not establish each of the elements of standing, a court must dismiss that claim for lack of subject matter jurisdiction. Id. (citing Valley Force Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 475-76 (1982)). Any decision by the court where the case-or-controversy requirement is not met "would be an improper advisory opinion on an abstract question." Maryland Cas. Co. v. Pacific Co., 312 U.S. 270, 273 (1941).

4

## II. The FERPA claim

Plaintiff has not demonstrated that it has suffered an actual or imminent injury based on DRNC's request for information that, according to Plaintiff, is protected by FERPA.[1] Plaintiff has affirmatively stated that it will not produce the information requested by DRNC. The only recourse available to DRNC is the action it has taken, i.e. to file a civil action for declaratory and injunctive relief requiring CMBOE to produce the requested information. There is no civil or criminal sanction for failure to produce the information. DRNC's written indication of its intent to initiate a civil action regarding this matter may not be used to demonstrate injury to Plaintiff, as the threat of a lawsuit is not sufficient to establish actual or imminent injury. See Klingspor Abrasives, Inc. v. Woolsey, 2009 U.S. Dist. LEXIS 66747, *7, 2009 WL 2397088 (W.D.N.C. 2009).

---

[1] For the sake of argument in this Memorandum only, we will assume that FERPA applies to the information requested, and DRNC explicitly reserves the right to challenge this assertion in further proceedings. However, Plaintiff's application of FERPA to the names and contact information of the parents/guardians of students is erroneous. FERPA defines information such as the name, address and telephone number of a student as "directory information." 20 U.S.C. § 1232g(a)(5)(A). The regulations expressly permit general disclosure of directory information. 34 C.F.R. § 99.31(a)(3)(ii)(9)(i). Several courts have applied this provision to permit the P&A to obtain such directory information. For example, in Disability Law Ctr. of Alaska, Inc. v. Anchorage Sch. Dist., 581 F.3d 936 (9th Cir. 2009), the court referenced amicus briefs filed by the U.S. Department of Education and U.S. Department of Health and Human Services in a similar case before the Second Circuit. The Ninth Circuit adopted the agencies' interpretation of the DD Act and FERPA.

> The agencies stated that "if a school or other facility could refuse to provide the name and contact information, it could interfere substantially with P&A's investigation of abuse or neglect, thereby thwarting Congress' intent that P&As act to protect vulnerable populations from abuse or neglect." Furthermore, the agencies found "no indication that Congress believed that the carefully tailored access rights required under [the DD Act] would be subordinate to the general privacy requirements of FERPA." Rather, "permitting access as provided for under… the DD Act is generally consisted with Congress' intent relating to student privacy."

Id. at 940 (citing Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. Of Educ., 464 F.3d 229, 236 (2nd Cir. 2006)).

5

In its Complaint, Plaintiff posits that by providing the requested information to DRNC, Plaintiff "would breach the rights of the students under its protection and violate federal law." (Compl. ¶ 33). Neither of these alleged possible injuries are sufficient to establish an actual or imminent injury, however. Plaintiff is currently in possession of the information sought by DRNC. The potential for injury, i.e. that Plaintiff would violate federal law, is entirely speculative and will not come to pass through any action on the part of DRNC. Plaintiff controls whether it will suffer this alleged harm by disclosing the information in question. Having clearly indicated it will not release the requested information in the absence of a court order, Plaintiff cannot simultaneously allege that the tenuous possibility that it will produce the information and thereby violate federal law constitutes a "concrete and particularized injury." Moreover, production of the information would not violate federal law. FERPA permits the general disclosure of "directory information," and specifically permits the disclosure of any student information where such disclosure "is to comply with a judicial order or lawfully issued subpoena." 34 C.F.R. § 99.31(a)(3)(ii)(9)(i) – (11). See Arista Records LLC v. Doe, 551 F. Supp. 2d 1 (D.D.C. 2008)(holding that, because the court authorized various record companies to serve a subpoena on George Washington University seeking directory information for students the companies alleged infringed their copyrighted recordings by using an online file-sharing system, such disclosure was permitted by FERPA); Warner Bros. Records Inc., et al. v. Does 1-6, 527 F. Supp. 2d 1 (D.D.C. 2007)(holding that Georgetown University's disclosure of information in response to plaintiff's subpoena complied with FERPA).

As Plaintiff has not alleged it has suffered an actual or imminent, concrete and particularized injury, and therefore has failed to make the requisite showing that it has standing, the Complaint must be dismissed as to the FERPA claim.

6

### III. The probable cause claim

In its Complaint, Plaintiff suggests, though does not explicitly state, that DRNC's refusal to provide the basis for its probable cause determination prevents Plaintiff from making its own evaluation regarding probable cause and, therefore, injures Plaintiff. However, Plaintiff has not demonstrated that it has suffered an actual or imminent injury based on DRNC's refusal to provide its basis for its probable cause determination. Nor *can* Plaintiff demonstrate such an injury – Plaintiff cannot be injured by DRNC's refusal to provide information to which Plaintiff is unequivocally not entitled.

The Developmental Disabilities Assistance and Bill of Rights Act ("the DD Act"), 42 U.S.C. §§ 15041 et seq., and its implementing regulations, 45 C.F.R. §§ 1326.19 et seq., provide the P&A system the right to access certain information "*when the system* determines that there is probable cause" to believe that an individual has been subject to abuse or neglect. 45 C.F.R. §§ 1326.25(a)(3) and 1326.27(b)(ii) (emphasis added). The statute and regulations are entirely devoid of any suggestion that the service provider from whom the P&A seeks information has any role in the probable cause determination. On the contrary, the comments to the DD Act regulations explicitly state, "Where there is controversy between the P&A and service provider [regarding grounds to request records], *the P&A makes the relevant determination, in the interest of providing strong protection and advocacy for people with developmental disabilities* in keeping with the purposes of the DD Act." Developmental Disabilities Program, 80 Fed. Reg. 44,796, 44,800 (July 27, 2015)(emphasis added). The Protection and Advocacy of Individual Rights Program ("the PAIR Act"), 29 U.S.C. § 794e, incorporates the provisions of the DD Act

Case 3:17-cv-00498-RJC-DSC   Document 8   Filed 09/15/17   Page 7 of 21

and thus endows the P&A with the same right to determine whether probable cause exists. 29 U.S.C. § 794e(f)(2).[2]

In the present case, DRNC has made a determination that probable cause exists to believe that an individual(s) has been subject to abuse or neglect. This determination is sufficient to invoke its authority to access certain records; there is no accompanying requirement that DRNC divulge the basis for its determination. Such a requirement would undermine the statutes' clear intent that a probable cause determination remain the exclusive domain of the P&A. 42 U.S.C. § 10805(a)(4)(iii); 42 U.S.C. § 15043 (a)(2)(A)(I)(ii)(III); 42 C.F.R. § 51.41(b)(2)(iii); 45 C.F.R. §§ 1326.25(a)(3) and 1326.27(b)(ii).

More importantly, the DD and PAIR Acts prohibit such disclosure, as DRNC is obligated to maintain the confidentiality of all records and information pertaining to "the identity of the individuals… who furnish information that forms the basis for a determination that probable cause exists" and those individuals who "provided information to the P&A for the record." 45 C.F.R. § 1326.28(b)(1)(iii-iv).

Each court to consider probable cause determinations in the P&A context has held that the P&A, not a provider agency or state agency, is the party who determines whether probable cause exists. See, e.g., Arizona Ctr. for Disability Law v. Allen, 197 F.R.D. 689, 693 (D. Ariz. 2000)("Neither the P&A laws nor the regulations promulgated thereunder contemplate that the state or a service provider will reevaluate the P&A's determination of probable cause and deny access to the P&A because the state or service provider disagrees that probable cause exists.").

_____

[2] Although not referenced in Plaintiff's complaint, the third principle statute governing the P&A, the Protection and Advocacy for Individuals with Mental Illness Act ("the PAIMI Act"), 42 U.S.C. §§ 10801 et seq., and its implementing regulations, 42 C.F.R. §§ 51.1 et seq., contain identical language regarding probable cause determinations. See 42 C.F.R. § 51.41(b)(2)(iii) ("…and *the P&A system has determined* that there is probable cause to believe that the individual has been or may be subject to abuse or neglect.")(emphasis added).

8

See also Sonnenberg v. Disability Rights Idaho, Inc. (In re Disability Rights Idaho Request for Ada Cnty. Coroner Records Relating to the Death of D.T.), 168 F. Supp. 3d 1282 (D. Idaho 2016)("In short, DRI [Disability Rights Idaho] has determined probable cause exists to investigate D.T.'s death and the Coroner is not permitted to challenge this conclusion."); Ala. Disabilities Advocacy Program v. SafetyNet YouthCare, Inc., 2015 U.S. Dist. LEXIS 16343, *30-32, 2015 WL 566946 (S.D. Ala. 2015)(referencing the legislative and regulatory history of the P&A statutes in support of the court's holding that "the determination of probable cause is within the discretion of the P&A alone."); Office of Prot. & Advocacy for Persons with Disabilities v. Armstrong, 266 F. Supp. 2d 303 (D. Conn. 2003)("It is by now a settled principle that the P&A is 'the final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect.'" (internal citations omitted)); Iowa Prot. & Advocacy Servs. v. Rasmussen, 521 F. Supp. 2d 895 (S.D. Iowa 2002)("[t]he statute [DD Act] is clear that it is the protection and advocacy systems that shall make the relevant probable cause determination, as a result of its 'monitoring and other activities,' and *not* a state agency." (emphasis in original)); Ctr. for Legal Advocacy v. Earnest, 188 F. Supp. 2d 1251, 1257 (D. Colo. 2002)("The Court also recognizes that a determination of probable cause made by the protection and advocacy system will not be reevaluated by the state or service provider merely because the state or service provider disagrees that probable cause exists.").

As Plaintiff has not alleged it has suffered an actual or imminent, concrete and particularized injury, and therefore has failed to make the requisite showing that it has standing, the complaint must be dismissed as to the FERPA claim.

9

## SECOND ARGUMENT: DISCRETION UNDER DECLARATORY JUDGMENT ACT

Plaintiff's claims do not serve the purposes of the Declaratory Judgment Act. Further, Plaintiff is using its requests for declaratory relief to effect a race to the courthouse, and exercising jurisdiction in the present matter would not further judicial efficiency.

### I.   Standard of Review: Discretion Pursuant to the Declaratory Judgment Act

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction… any court of the Unites States… may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A court's exercise of jurisdiction under the Act is not compulsory; rather, the Declaratory Judgment Act has "been understood to confer on federal courts *unique and substantial discretion* in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)(emphasis added). A federal district court has "'great latitude in determining whether to assert jurisdiction over declaratory judgment actions,' but should refuse to entertain a declaratory judgment only for good cause." First Nationwide Mortgage Corp. v. FISI Madison, LLC, 219 F. Supp. 2d 669, 672 (D.Md. 2002)(quoting Aetna Cas. & Surety Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)). "A balance must be struck between the... [potential plaintiff's] traditional interests in choice of forum, timing, and avoiding a race to the courthouse… [and a potential defendant's] interest in being relieved from the uncertainty and insecurity arising from a controversy." State Farm Fire and Cas. Co. v. Taylor, 118 F.R.D. 426, 430 (M.D.N.C. 1988). In deciding whether to entertain a declaratory action, "a court should consider whether a useful practical purpose will be served thereby; in other words, does the declaratory plaintiff need the remedy." Id. (citing United States v. Jones, 176 F.2d 278, 280 (4th Cir. 1949)). The factors typically considered by courts include "(1) whether the action serves the

purpose of the Declaratory Judgment Act; (2) whether the action constitutes procedural fencing; (3) judicial efficiency; and (4) fairness to the parties." Hipage Co. v. Access2Go, Inc., 589 F.Supp.2d 602, 614-615 (E.D. Va. 2008)(internal citations omitted).

## II.  Plaintiff's requests for declaratory relief do not serve the purpose(s) of the Declaratory Judgment Act.

### a.  Plaintiff seeks an advisory opinion, not the resolution of a controversy.

Jurisdiction under the Declaratory Judgment Act is appropriate only where a justiciable controversy exists. "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-241 (1937)(internal citations omitted). The Act "does not exist to convert judicial tribunals into counselors and impose upon them the duty of giving advisory opinions to any parties who may come into court and ask for either academic enlightenment or practical guidance concerning their legal affairs." Klingspor Abrasives, Inc. v. Woolsey, 2009 U.S. Dist. LEXIS 66747, *8, 2009 WL 2397088 (W.D.N.C. 2009).

The plain language of Plaintiff's complaint makes clear it seeks an advisory opinion from this Court. With regard to its FERPA claim, Plaintiff requests "the Court's interpretation" of the relationship between FERPA and the DD and PAIR Acts, and whether it is required to release the requested information to DRNC – in other words, practical guidance regarding its behavior. As to the probable cause claim, Plaintiff similarly fails to identify a justiciable controversy; it again seeks an abstract interpretation as to who determines the existence of probable cause in the context of the DD and PAIR Acts. As discussed more fully in Defendant's First Argument, the

11

dispute underlying Plaintiff's claims is not "of sufficient immediacy to warrant the issuance of a declaratory judgment, [and] any decision by this Court on this claim would be an improper advisory opinion." Krebs v. Charlotte Sch. of Law, LLC, 2017 U.S. Dist. LEXIS 143060, *32 (W.D.N.C. Sept. 5, 2017). Therefore, the Court should decline to exercise jurisdiction over the action.

**b. This belated action is inappropriate under the Declaratory Judgment Act, as DRNC has already been injured and its claims are ripe for adjudication.**

Declaratory actions are designed to clarify the rights of each party so they can tailor their conduct to prevent the accrual of damages and to avoid future litigation. At first blush, it would seem that a declaratory judgment action is appropriate in the present case, as such relief would clarify Plaintiff's obligations and rights, and avoid actions that would expose it to liability. However, "a declaratory judgment is unavailable in situations where… claims and rights asserted have fully matured, and the alleged wrongs have already been committed." Trull v. Smolka, 2008 U.S. Dist. LEXIS 70233, *8, 2008 WL 4279599 (E.D. Va. 2008). Where a declaratory judgment "would do nothing to steer Plaintiff away from" the alleged injury to the defendant, "a declaration from this Court is not consistent with the purpose of the Declaratory Judgment Act." Tucker Materials, Inc. v. Safesound Acoustics, Inc., 971 F. Supp. 2d 537, 551 (W.D.N.C. 2013).

In the present matter, the alleged wrong has already been committed: Plaintiff has denied DRNC access to records to which it is entitled. A judgment from the Court will not prevent Plaintiff from injuring DRNC. Therefore, Plaintiff's request for declaratory relief at this stage does not serve the purpose of the Declaratory Judgment Act.

**c. This action is inappropriate under the Declaratory Judgment Act, as DRNC has not failed or delayed in litigating its injuries.**

Another purpose of the Declaratory Judgment Act is to provide "a remedy in situations in which a dispute has reached the point that a party *is* entitled to seek a coercive remedy but has *failed* to do so." State Farm Fire and Cas. Co. v. Taylor, 118 F.R.D. 426, 429 (M.D.N.C. 1988)(emphasis in original). "The person who may be entitled to coercive relief has traditional interests in choice of forum, timing, and avoiding a race to the courthouse," while "the other party has an interest in being relieved from the uncertainty and insecurity arising from a controversy." Id. at 430. Thus, where the party entitled to bring a coercive action fails or delays in bringing it, a declaratory judgment is useful "if it prevents the accrual of damages" and/or "if it relieves a party from acting at his peril while uncertain of his legal rights because another party is yet to bring a coercive action." Id. at 429.

Whether a party has failed or delayed in bringing a coercive action is a fact-specific determination. For example, in State Farm v. Taylor, State Farm filed a declaratory judgment action three days before notifying the Taylors that their insurance claim was denied. The court found that the Taylors did not fail or delay in bringing a coercive action; instead, they were deprived the opportunity to bring such action. The Taylors filed coercive counterclaims and indicated that, should the court dismiss the declaratory judgment action, they intended to initiate a coercive suit immediately. In dismissing State Farm's action, the court found that "[s]ince there was no delay, State Farm did not need relief from uncertainty and insecurity resulting from a 'coercive plaintiff's' failure to bring an affirmative action.'" Id. at 430. The court also noted, "State Farm has not contended, nor does the Court perceive, a potential for the accrual of damages or the need for State Farm to act at its peril while being uncertain of its rights." Id. at

429. See also Ohio Cas. Ins. Co. v. Williams, 2010 U.S. Dist. LEXIS 3391, 2010 WL 274233 (M.D.N.C. 2010)(holding that filing an action for declaratory relief in the midst of ongoing settlement negotiations, "abruptly ending any possibility" of settlement, constituted an action in anticipation of coercive litigation, and therefore dismissing the case as an improper use of the Declaratory Judgment Act.).

State Farm is analogous to the matter at hand. There is a dispute regarding the parties' legal rights and obligations, and one party, DRNC, is entitled to seek a coercive remedy, i.e. an injunction compelling Plaintiff to produce the requested records. DRNC has not failed or delayed in bringing such suit. In a letter dated August 9, 2017, Plaintiff stated its belief that FERPA, state law and CMBOE policies prevent it from providing the information DRNC requested. However, counsel for CMS invited DRNC to discuss the matter further in an attempt to reach a resolution. On August 14, DRNC responded to this invitation, in writing, and asked for a response by August 16. DRNC explicitly indicated that, should the parties not reach a resolution, DRNC intended to pursue litigation. Plaintiff did not respond to the August 14 letter; instead, Plaintiff filed its complaint on August 18. DRNC had no notice of such filing, and initiated its own action on August 23 (one week after the deadline for the requested response had passed). Disability Rights NC v. Charlotte-Mecklenburg Schools Board of Education, Civil Action No. 3:17-cv-00511. DRNC did not fail or delay in filing a coercive action, and Plaintiff did not need relief from any resulting uncertainty or insecurity.  Nor has Plaintiff demonstrated that it may accrue damages or that it needs to act while still uncertain of its rights. Therefore, Plaintiff's request for declaratory relief at this stage does not serve the purpose of the Declaratory Judgment Act, and this action should be dismissed.

14

**III. Plaintiff's claims constitute a race to the courthouse in order to test potential defenses, which is an impermissible use of the Declaratory Judgment Act.**

Generally, "where the same parties have filed similar litigation in separate federal fora, doctrines of federal comity dictate that the matter should proceed in the court where the action was first filed, and that the later-filed action should be stayed, transferred, or enjoined." L&H Techs., Inc. v. Technosports, Inc., 2006 U.S. Dist. LEXIS 5089, *4, 2006 WL 163622 (W.D.N.C. 2006). Where "special circumstances" exist, an exception to this first-filed rule may be warranted. For example, "there may be a point at which 'the potential lawsuit that may otherwise have given rise to a proper declaratory judgment action has become so certain or imminent, that the declaratory judgment action is merely an improper act of forum shopping, or a race to the courthouse." Id. at *4-5. "It is well established that courts disfavor" such races to the courthouse. Hipage Co. v. Access2Go, Inc., 589 F. Supp. 2d 602, 614 (E.D. Va. 2008)(citing Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994)).  The Court "may properly consider the inequity of permitting a declaratory plaintiff to gain precedence in time and forum by filing a declaratory action which is *merely anticipatory* of" a defendant's action. State Farm at 430 (emphasis in original).

In Tucker Materials, Inc. v. Safesound Acoustics, Inc., 971 F. Supp. 2d 537 (W.D.N.C. 2013), this Court found that where the plaintiff was on notice that the defendant planned to initiate litigation against it, "[t]he procedural fencing and race to the courthouse employed by Plaintiff in bringing this action weighs strongly in favor of declining to exercise jurisdiction in this case." Id. at 552. Like the plaintiff in that case, Plaintiff CMBOE was on notice, as of August 3 and again on August 14, of DRNC's unequivocal intent to litigate the dispute if resolution could not be reached. Plaintiff filed the present action on August 16, a mere two days

15

after DRNC reiterated its intent to initiate litigation. The timing of Plaintiff's action demonstrates that it engaged in an improper race to the courthouse. Therefore, Plaintiff's declaratory actions should be dismissed.

Another context in which courts have identified "special circumstances" supporting an exception to the first-filed rule (and therefore dismissal of a declaratory action) is the use of the Declaratory Judgment Act to improperly race to the courthouse in order to test the viability of a defense. Calderon v. Ashmus, 523 U.S. 740 (1998)(holding a party cannot use the Declaratory Judgment Act "to gain a litigation defense by obtaining a ruling on an affirmative defense."). "The anticipation of defenses is not a proper purpose of the declaratory remedy because it would lead to a race to the courthouse." State Farm Fire and Cas. Co. v. Taylor, 118 F.R.D. 426, 431 (M.D.N.C. 1988). This Court has expressed the view "that where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit, no declaratory judgment should issue." Tucker Materials at 552 (internal citations omitted).

State Farm v. Taylor is again analogous to the matter at hand. In seeking a declaration regarding its liability under a policy issued to the Taylors, "State Farm simply anticipated the defense it would assert against the Taylors and outraced them to the courthouse before giving them notice of denial." 118 F.R.D. 426, 430. The court found this particularly compelling in granting the Taylors' motion to dismiss, writing "the anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse." Id. at 429-430. Similarly, in Tucker Materials, a building supply company brought suit against an installation agency. The supply company sought a declaration that it had not violated state consumer

16

protection and/or federal antitrust law. In dismissing the action, this Court observed that "[c]ourts have nearly uniformly held that declaratory relief is inappropriate in cases such as this where an alleged tortfeasor sues the insured party for a declaration of nonliability in anticipation of suit." 971 F. Supp. 2d 537, 552. This Court found that "[a]t the time Plaintiff brought this action, [Plaintiff] was on notice that Defendant was planning on initiating litigation against it for alleged violations of Chapter 75 [state consumer protection laws]. The procedural fencing and race to the courthouse employed by Plaintiff in bringing this action weighs strongly in favor of declining to exercise jurisdiction in this case." Id. at 552.

Like the plaintiff in State Farm, Plaintiff in this case has simply anticipated the defenses it might assert in a coercive action filed by DRNC – that disclosure of the requested information is prohibited by FERPA, and that DRNC lacks probable cause to access the information – and outraced DRNC to the courthouse in order to convert those defenses into an action for declaratory judgment. Similar to the plaintiff in Tucker Materials, Plaintiff was on notice, as recently as two days before initiating this action, that DRNC intended to litigate the dispute if resolution could not be reached. The timing of Plaintiff's action demonstrates that it engaged in an improper race to the courthouse. Therefore, Plaintiff's declaratory actions should be dismissed.

**IV. Judicial efficiency will not be served by granting jurisdiction over Plaintiff's claims.**

Declaratory judgment is not intended to permit parties to "try a controversy by piecemeal, or to try particular issues without settling the entire controversy." Alphatronix, Inc. v. Pinnacle Micro, Inc., 814 F. Supp. 455, 456 (M.D.N.C. 1993)(citing Mitcheson v. Harris, 955 F.2d 235, 239 (4th Cir. 1992)). "A court may be induced to deny declaratory relief if the judgment sought would not settle the controversy between the parties; such relief is not to be used to try a case by

piecemeal." <u>State Farm</u> at 430. "A contrary view would promote a disorderly race to the courthouse. It would create an environment in which parties to disputes would feel the urgency to file a lawsuit lest they lose a tactical advantage. Such an environment would discourage the *prelitigation* settlement of disputes and thus *prejudice* judicial economy." <u>Id.</u> at 431; <u>see also</u> <u>Hipage Co.</u>, 589 F.Supp.2d 602, 614 (E.D. Va. 2008).

<u>Klingspor Abrasives, Inc. v. Woolsey</u> is instructive, though based upon the State version of the Declaratory Judgment Act, not the federal Act. 2009 U.S. Dist. LEXIS 66747, 2009 WL 2397088 (W.D.N.C. 2009). In that case, Woolsey filed a charge of discrimination against Klinspor with the Equal Employment Opportunity Commission, alleging he was terminated based on his age and his opposition to discriminatory actions against older employees and females. Klingspor sought a declaration that it had not unlawfully discriminated against Woolsey. This Court held "declaratory judgment should not be invoked to try a controversy by piecemeal, or to try particular issues without settling the entire controversy. This is especially so where a separate suit has been filed, or is likely to be filed, that will more fully encompass the scope of the entire controversy." <u>Id.</u> at *8-9. <u>See</u> <u>Tucker Materials</u>, 971 F. Supp. 2d 537, 551 (holding that, among other factors, because a declaratory judgment "would do nothing to address the breach of contract or some of the additional torts asserted by Defendant," dismissal of the action was appropriate).

Plaintiff's declaratory judgment action in the present case is the embodiment of piecemeal litigation. Resolution of Plaintiff's claims would not settle the entire controversy between the parties.  For example, should this Court hold that the P&A alone determines probable cause, the question remains as to whether, in the present case, Plaintiff is required to produce the information requested. Plaintiff may still seek to defend its failure to produce the

information by, e.g., invoking state and federal confidentiality requirements. Such assertions by Plaintiff would necessitate further judicial review to determine whether DRNC is entitled to access the requested information. As DRNC has filed an action that will more completely encompass the full scope of the controversy, that action is the appropriate forum for resolution.

As both Plaintiff's Civil Action (498) and DRNC's subsequent Civil Action (511) were filed in this forum, the Court may consider that consolidation is a potential remedy. However, consolidation would not serve judicial efficiency. It would merely combine the two matters, resulting in confusion and a lack of clear delineation as to the parties (CMBOE would become both Plaintiff and Consolidated Defendant; DRNC would be both Defendant and Consolidated Plaintiff). Judicial economy can be most effectively served if the present Civil Action (498) is swept aside and litigation of the issues proceeds in a recognized framework (i.e. Civil Action 511), where the P&A demands access to information and records, and the service provider raises what it deems to be appropriate defenses.

## CONCLUSION

Defendant has shown that Plaintiff has not met its burden to establish standing in the present case. Defendant has also shown good cause as to why this Court should not exercise jurisdiction under the Declaratory Judgment Act. Defendant thus requests the Court grant judgment in its favor, and grant Defendant's Motion to Dismiss.

Respectfully submitted,

/s/ Kristine L. Sullivan_____
Kristine L. Sullivan, N.C. State Bar No. 35595
kristine.sullivan@disabilityrightsnc.org

/s/ John R. Rittelmeyer_____
John R. Rittelmeyer, N.C. State Bar No. 17204
john.rittelmeyer@disabilityrightsnc.org

*Attorneys for Defendant*
DISABILITY RIGHTS NC
3724 National Drive, Suite 100
Raleigh, NC 27612
Phone: (919) 856-2195
Fax: (919) 856-2244

<u>Certificate of Service</u>

The undersigned hereby certifies that on September 15, 2017, I electronically filed the

foregoing Memorandum in Support of Defendant's Motion to Dismiss with the Clerk of Court

using the CM/ECF system, which will send notification of such filing to counsel for Plaintiff.

Respectfully submitted,

/s/ Kristine L. Sullivan_____
Kristine L. Sullivan, N.C. State Bar No. 35595
kristine.sullivan@disabilityrightsnc.org
*Attorney for Defendant*
DISABILITY RIGHTS NC
3724 National Drive, Suite 100
Raleigh, NC 27612
Phone: (919) 856-2195
Fax: (919) 856-2244