UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00498-RJC-DSC

| | |
|---|---|
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION d/b/a Charlotte-Mecklenburg Schools, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DISABILITY RIGHTS OF NORTH CAROLINA, )<br>)<br>)<br>Defendant. ) | ORDER |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 49), and Defendant's Motion for Summary Judgment, (Doc. No. 50). Plaintiff Charlotte-Mecklenburg Board of Education ("Plaintiff" or "CMBE") controls and operates Mecklenburg County public schools, including the Metro School. Metro serves students who are cognitively disabled. Defendant Disability Rights of North Carolina ("Defendant" or "DRNC") is a private organization that has been designated as the Protection and Advocacy Agency ("P&A") for the State of North Carolina. The Developmental Disabilities Assistance and Bill of Rights Act ("DDA") and the Protection and Advocacy of Individual Rights Program ("PAIR") authorize a P&A to have access to records of individuals with disabilities under certain circumstances. One such circumstance is when the P&A has probable cause to believe that an individual has been or may be subject to abuse or neglect. DRNC determined that it had such probable cause as to all Metro students and requested

that CMBE provide certain records and information, including the names of and contact information for the parents or guardians of all students. CMBE refused to provide the requested parent name and contact information, contending that the Family Educational Rights and Privacy Act ("FERPA") prohibited it from doing so. CMBE also contended that DRNC's stated basis for its probable cause determination was insufficient under the DDA and PAIR. Through this action, the parties ask the Court to interpret these statutes and the parties' respective obligations thereunder.

I. BACKGROUND

On June 7, 2017, DRNC sent a letter to CMBE stating, in relevant part, that DRNC "received a complaint regarding improper use of restraint, including but not limited to wheelchairs and other assistive technology devices, at Metro" and thus was "conducting an investigation into student care and treatment." (Doc. No. 10, at Ex. 1.) DRNC requested that CMBE provide the individual education plans ("IEPs") for all students at Metro and copies of all forms, waivers, and other parental permission given to the school for the use of wheelchairs or other devices.[1] In the alternative, DRNC requested the names of and contact information for the parents or guardians ("parent name and contact information") of each student enrolled at Metro so that DRNC could contact the parents or guardians to obtain consent to the release of complete records.

At some point, DRNC initiated monitoring activities at Metro. Thereafter, on

---

[1] DRNC requested that all personally identifiable information be redacted and that CMBE include only those portions of the IEPs that describe the use of assistive technology, seclusion, and/or restraint. (Doc. No. 10, at Ex. 1.)

June 16, 2017, DRNC sent an email to CMBE stating:

> For some of the students, [DRNC] has received a complaint of alleged abuse or neglect, and seeks the requested records based upon such a complaint. . . . For the remainder of the students . . . [DRNC] has determined that there is probable cause to believe that the students may have been, or may be, subjected to abuse/neglect. Based on the information provided to [DRNC] and [DRNC's] observations during the monitoring visit (including the extensive number of wheelchairs, Rifton chairs,[2] and other devices present in Metro's classrooms that constitute a restraint), [DRNC] finds there is a reasonable ground to believe that all of the other students at Metro have been or may be subject to abuse/neglect. Therefore, [DRNC] is entitled to obtain the requested records for all students at Metro.

(Doc. No. 10, at Ex. 7.)

On July 13, 2017, CMBE mailed to DRNC the redacted IEPs of all Metro students. (Doc. No. 10, ¶ 20; Doc. No. 25, ¶ 20.)

On August 3, 2017, DRNC sent a letter to CMBE stating that it had probable cause to believe that abuse or neglect occurred at Metro and requested parent name and contact information for all students. (Doc. No. 10, at Ex. 4.)

On August 9, 2017, CMBE sent a response letter to DRNC denying DRNC's request for parent name and contact information for all students. (Doc. No. 10, at Ex. 5.) CMBE requested additional information underlying DRNC's probable cause determination. CMBE stated that its position was that "DRNC is not entitled to parent or guardian contact information due to the protections guaranteed to [its] students under FERPA, North Carolina privacy laws, and CMS board policies." (Doc. No. 10, at Ex. 5.)

---

[2] A Rifton chair is an activity chair for individuals with disabilities. See https://www.rifton.com/products/special-needs-chairs/rifton-activity-chairs.

3

On August 14, 2017, DRNC sent a letter to CMBE in which it provided a "limited summary of the information underlying [its] probable cause determination" as follows:

> During visits to Metro School, [DRNC] staff members observed students being transported throughout the school in wheelchairs. [They] learned that many of these students are capable of ambulating and do not require the use of a wheelchair. Instead, the wheelchairs were used for 'safety' and the convenience of staff. Such use of a wheelchair is an inappropriate form of restraint. During these visits, [DRNC] staff members observed students sitting in Rifton chairs. [They] learned that for many of these students, the Rifton chairs do not serve as adaptive equipment or assistive technology. Instead, they are used to contain the students and 'keep them still' during classroom instruction. Such use of a Rifton chair is an inappropriate form of restraint. [DRNC] received information indicating that these practices are fairly commonplace. Therefore, [DRNC] determined that there is probable cause to believe students at Metro School have been subjected to the use of inappropriate restraint, and thus to abuse and/or neglect.

(Doc. No. 10, at Ex. 6.)

CMBE initiated this action on August 18, 2017. CMBE's first claim seeks a declaratory judgment that FERPA prohibits CMBE from providing to DRNC parent name and contact information for all Metro students. (Doc. No. 10, at 7–8, 11.) CMBE's second claim seeks a declaratory judgment that DRNC does not have a sufficient factual basis for its determination that it has probable cause to believe all Metro students have been or may be subject to abuse or neglect and, thus, CMBE is not required to provide the requested parent name and contact information. (Doc. No. 10, at 8–11.)

On August 23, 2017, DRNC initiated a separate action against CMBE, which was consolidated with this action on November 9, 2017. (Doc. No. 20.) DRNC seeks

declaratory and injunctive relief under the DDA, PAIR, and 42 U.S.C. § 1983. Specifically, DRNC seeks (1) a declaratory judgment that CMBE's refusal to provide the requested information violates the DDA and PAIR and (2) permanent injunctive relief requiring CMBE to provide parent name and contact information for all Metro students. (No. 3:17-cv-00511-RJC-DSC, Doc. No. 1, at 8.)

On September 6, 2019, the parties moved for summary judgment on all claims and issues.[3] On November 26, 2019, the Court held oral argument on the pending motions. Having been fully briefed and argued, these motions are now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett,

---

[3] Both parties' briefs make clear that they each move for summary judgment on all claims. (Doc. No. 49-1, at 1; Doc. No. 50-1, at 4.)

5

477 U.S. 317, 323 (1986) (quotation marks omitted). This "burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325 (quotation marks omitted).

Once this initial burden is met, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. The nonmoving party may not rely upon mere allegations or denials of allegations in the pleadings to defeat a motion for summary judgment; rather, it must present sufficient evidence from which "a reasonable [factfinder] could return a verdict for the nonmoving party." Id. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences therefrom in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248–49. "If the evidence is merely colorable or is not significantly probative," summary judgment is appropriate. Id. at 249–50 (citations omitted).

## III. DISCUSSION

The motions raise two main issues. First, does FERPA prohibit CMBE from

providing to DRNC parent name and contact information for all Metro students? And second, does DRNC have a sufficient factual basis for its determination that it has probable cause to believe all Metro students have been or may be subject to abuse or neglect?

### A. FERPA does not prohibit CMBE from providing to DRNC parent name and contact information for all Metro students.

CMBE argues that FERPA prohibits it from releasing parent name and contact information, notwithstanding the DDA and PAIR. DRNC agrees that FERPA generally prohibits CMBE from releasing parent name and contact information; however, DRNC argues that the DDA and PAIR provide a limited override of FERPA such that CMBE must release parent name and contact information when the requirements for access to such information under the DDA and PAIR are satisfied. The Court concludes that it need not reach the issue of whether the DDA and PAIR provide a limited override of FERPA because FERPA and the DDA/PAIR are not in conflict—that is, FERPA does not prohibit CMBE from providing to DRNC parent name and contact information where DRNC has satisfied the prerequisites for access to such information under the DDA and PAIR.

A court's objective in all cases of statutory interpretation is "to ascertain and implement the intent of Congress, and Congress's intent can most easily be seen in the text of the Acts it promulgates." Aziz v. Alcolac, Inc., 658 F.3d 388, 392 (4th Cir. 2011) (quotation marks omitted). Thus, a court's inquiry begins with "the plain meaning of the statutory language." Schilling v. Schmidt Baking Co., 876 F.3d 596, 601 (4th Cir. 2017). "When a term goes undefined in a statute, [courts] give the term

its ordinary meaning." Kouichi Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 566 (2012). Courts frequently turn to dictionaries for help in determining a term's ordinary meaning. Yates v. United States, 574 U.S. 528, 537 (2015); Johnson v. Zimmer, 686 F.3d 224, 232 (4th Cir. 2012). "In interpreting the plain language of the statute, [courts] also look to the specific context in which the language is used, and the broader context of the statute as a whole." Hurlburt v. Black, 925 F.3d 154, 158 (4th Cir. 2019) (quotation marks omitted). The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." United States v. Hager, 721 F.3d 167, 182 (4th Cir. 2013) (quotation marks omitted) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992)). "On the other hand, if the text of a statute is ambiguous, [courts] look to other indicia of congressional intent such as the legislative history to interpret the statute." Lee v. Norfolk S. Ry., 802 F.3d 626, 631 (4th Cir. 2015) (quotation marks omitted). A statute is ambiguous if "it lends itself to more than one reasonable interpretation." Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245, 248 (4th Cir. 2004).

FERPA provides that "[n]o funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information," which includes parent name and contact information.[4] 20 U.S.C. § 1232g(b)(2) (emphasis

---

[4] FERPA provides specific exceptions allowing release of information, none of which

8

added); 34 C.F.R. § 99.3 (defining "personally identifiable information"). Around the time of FERPA's enactment, "policy" was defined as "a definite course of action adopted for the sake of expediency, facility, etc.," and "practice" was defined as "habitual or customary performance; operation" and "habit; custom." The Random House Dictionary of the English Language 1113, 1128 (1971).

Consistent with these definitions of "policy" and "practice," courts have recognized that "the language of [FERPA], on its face, appears to limit its prohibition to those situations where an educational agency has a policy or practice of permitting the release of education records." Ellis v. Cleveland Mun. Sch. Dist., 309 F. Supp. 2d 1019, 1023 (N.D. Ohio 2004) (quotation marks omitted); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 288 (2002) ("FERPA's nondisclosure provisions further speak only in terms of institutional policy and practice, not individual instances of disclosure."). "[T]he requirement placed on the participating institution is not that it must prevent the unauthorized release of education records, . . . but that it cannot improperly release such records as a matter of policy or practice." Gundlach v. Reinstein, 924 F. Supp. 684, 692 (E.D. Penn. 1996). Indeed, "FERPA was designed to address systematic, not individual, violations of students' privacy by unauthorized releases of sensitive information in their educational records." Ellis, 309 F. Supp. 2d at 1023 (quotation marks omitted). Accordingly, an educational agency does not violate FERPA by releasing records or information unless it does so pursuant to an official policy or practice. Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 151 (2d Cir. 2002)

---

are applicable here.

9

(affirming dismissal of FERPA claim where plaintiff alleged that defendants released information in violation of FERPA but failed to allege that defendants had a policy or practice of permitting unauthorized release of educational records or information); Achman v. Chisago Lakes Indep. Sch. Dist. No. 2144, 45 F. Supp. 2d 664, 674 (D. Minn. 1999) (concluding that an educational agency did not violate FERPA by releasing educational records without parental consent because there was no evidence that the agency had a policy or practice of releasing such records).

Here, CMBE claims that FERPA prohibits it from ever disclosing parent name and contact information unless a specific exception under FERPA applies—there is no allegation or evidence that CMBE has a policy or practice of releasing parent name and contact information (or any other information covered by FERPA). As FERPA only prohibits the release of records and information pursuant to a policy or practice, FERPA does not prohibit CMBE from releasing to DRNC parent name and contact information when DRNC has satisfied the prerequisites for access to such information under the DDA and PAIR. Therefore, the Court denies CMBE's Motion for Summary Judgment as to its first claim for a declaratory judgment and grants DRNC's Motion for Summary Judgment as to this claim.

### B. DRNC has failed to come forward with any evidence to support its probable cause determination as to all Metro students.

CMBE & DRNC disagree as to whether DRNC's stated basis is sufficient under the DDA and PAIR for its determination that it has probable cause to believe all Metro students have been or may be subject to abuse or neglect.

Congress enacted the DDA "in response to the inhumane and despicable

condition in which persons with developmental disabilities were living." Arizona Ctr. for Disability Law v. Allen, 197 F.R.D. 689, 692 (D. Az. 2000). The DDA "offers States federal money to improve community services . . . for individuals with developmental disabilities." Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 250 (2011). "In return, the DDA requires each state to establish a [P&A] that is authorized to investigate reports of abuse and neglect of people with developmental disabilities, to remedy rights violations, and to provide other advocacy services." Allen, 197 F.R.D. at 692. Under PAIR, these protections were extended to people with disabilities generally. Id. To receive funding under PAIR, a state must establish a P&A that has the same general authorities as set forth in the DDA. 29 U.S.C. § 794e; Disability Rights Wis., Inc. v. State Dep't of Pub. Instruction, 463 F.3d 719, 725 (7th Cir. 2006).

The DDA and PAIR contain three provisions granting a P&A access to records, only one of which is applicable here. Under this provision, a P&A shall have access to all records of any individual with a disability when: (1) the individual has a legal guardian, conservator, or other legal representative; (2) a complaint has been received by the P&A about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, the P&A has determined that "there is probable cause to believe that such individual has been subject to abuse or neglect"; (3) the P&A, upon receipt of the name of and contact information for the parent or guardian, has contacted the individual's parent or guardian; (4) the P&A has offered assistance to the individual's parent or guardian to resolve the situation; and (5) the parent or guardian has failed or refused to provide

11

consent on behalf of the individual. 42 U.S.C. § 15043(a)(2)(I)(iii); 29 U.S.C. § 794e; 45 C.F.R. § 1326.25(a)(3); Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ., 464 F.3d 229, 244 (2d Cir. 2006). The implementing regulations for the DDA and PAIR expressly provide that "[e]ducational agencies . . . must provide a P&A with the name of and contact information for the parent or guardian of a student for whom the P&A has probable cause to obtain records under the [DDA and PAIR]." 45 C.F.R. § 1326.25(f).

"Probable cause" is defined as

a reasonable ground for belief that an individual with developmental disability(ies) has been, or may be, subject to abuse or neglect . . . . The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.

Id. § 1326.19. "Abuse" is defined as "any act or failure to act which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused, injury or death to an individual with developmental disabilities" and specifically includes "the use of bodily or chemical restraints which is not in compliance with Federal and State laws and regulations." Id. "Neglect" is defined as "a negligent act or omission by an individual responsible for providing services, supports or other assistance which caused or may have caused injury or death to an individual with a developmental disability(ies) or which placed an individual with developmental disability(ies) at risk of injury or death." Id.

It is well settled that as between a P&A and a custodian from whom records or information is sought, "a P&A is the final arbiter of probable cause for the purpose of

12

triggering its authority to access all records for an individual that may have been subject to abuse or neglect." Allen, 197 F.R.D. at 693; Disability Rights Ohio v. Buckeye Ranch, Inc., 375 F. Supp. 3d 873, 883 (S.D. Ohio 2019); Prot. & Advocacy Sys. v. Freudenthal, 412 F. Supp. 2d 1211, 1219 (D. Wyo. 2006). At the same time, however, a P&A's probable cause determination is subject to judicial review. Developmental Disabilities Program, 80 Fed. Reg. 44,796, 44,800 (July 27, 2015) (codified at 45 C.F.R. § 1326.19) ("In situations regarding abuse and neglect, the court remains the 'final arbiter' with respect to determining whether an adequate basis for probable cause exists."); Ala. Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr., 97 F.3d 492, 498 (11th Cir. 1996) (affirming district court's determination that the P&A had an adequate factual basis for its probable cause determination); Disability Rights Wash. v. Rolfe, No. 3:12-cv-05004, 2012 U.S. Dist. LEXIS 56611, at *10 (W.D. Wash. Apr. 23, 2012) ("While the [P&A] is the 'final arbiter' of probable cause between the [custodian] and the [P&A], the [P&A]'s determination of probable cause is subject to judicial review."); Disability Law Ctr. v. Discovery Acad., No. 2:07-cv-755, 2010 U.S. Dist. LEXIS 410, at *16, *19 (D. Utah Jan. 5, 2010) (determining whether the P&A had an adequate factual basis for its probable cause determination); Iowa Prot. & Advocacy Servs., Inc. v. Gerard Treatment Programs, L.L.C., 152 F. Supp. 2d 1150, 1172 n.1 (N.D. Iowa 2001) (stating that the custodian was not barred from seeking judicial review of the P&A's determination that it had probable cause as to all residents of the custodian's facility).

Here, DRNC contends that it has probable cause to believe that every student

at Metro has been or may be subject to abuse or neglect because it observed students being transported throughout the school in wheelchairs and students sitting in Rifton chairs, but learned that "many of these students" do not require the use of a wheelchair or a Rifton chair. Instead, the wheelchairs were used for safety and staff convenience, and the Rifton chairs were used to contain the students and keep them still during classroom instruction. DRNC states that such uses of a wheelchair and a Rifton chair are inappropriate forms of restraint and that it "received information indicating that these practices are fairly commonplace." (Doc. No. 10, at Ex. 6.) Thus, DRNC concluded it had probable cause to believe all students at Metro have been or may be subject to abuse or neglect.

The Court concludes that DRNC has failed to provide a sufficient factual basis for its determination that it has probable cause to believe all students at Metro have been or may be subject to abuse or neglect. The bare facts that a wheelchair or a Rifton chair was unnecessarily used for "many" students and that such use is "fairly commonplace" is insufficient to allow this Court to conclude that DRNC has a reasonable ground to believe that every student at Metro has been or may be subject to abuse or neglect.

Moreover, even if these facts were sufficient, DRNC has not come forward with any evidence to support these facts—it merely argues that it determined it had probable cause as to all students based on these facts, informed CMBE of these facts, and CMBE was thus required to release parent name and contact information.[5] J.S.

---

[5] During the hearing, DRNC stated that, if necessary, it could submit evidence to

Tarwater Developmental Ctr., 97 F.3d at 495 (reviewing transcript of anonymous phone call that provided basis for the P&A's probable cause determination); Buckeye Ranch, Inc., 375 F. Supp. 3d at 890–91 (stating that both parties submitted the evidence used by the P&A in concluding that it had a factual basis for its probable cause determination and thus the case was not one where the P&A failed to come forward with any factual support for its probable cause determination); Discovery Acad., 2010 U.S. Dist. LEXIS 410, at *14, *16 (granting the custodian's motion for summary judgment where the P&A failed to come forward with any evidence to support its probable cause determination); Pa. Prot. & Advocacy, Inc. v. Royer-Greaves Sch. for Blind, No. 98-3995, 1999 U.S. Dist. LEXIS 4609, at *26–27 (E.D. Penn. Mar. 25, 1999) (denying the P&A's motion for summary judgment and entering summary judgment in favor of the custodian where the P&A had failed to come forward with any evidence to support a finding of probable cause).

In short, the basis DRNC communicated to CMBE is insufficient to support DRNC's probable cause determination as to all Metro students, and DRNC has failed to come forward with any evidence to support its probable cause determination. Therefore, the Court grants CMBE's Motion for Summary Judgment as to its second claim and DRNC's claims, and denies DRNC's Motion for Summary Judgment as to its claims and CMBE's second claim.

---

support its probable cause determination for *in camera* review. DRNC has had ample opportunity to submit evidence in support of its motion and in opposition to CMBE's motion as required by Rule 56, but at no time sought to submit such evidence for *in camera* review or otherwise.

IV. CONCLUSION

**IT IS THEREFORE ORDERED** that CMBE's Motion for Summary Judgment, (Doc. No. 49), and DRNC's Motion for Summary Judgment, (Doc. No. 50), are **GRANTED in part** and **DENIED in part** as follows:

1. As to CMBE's first claim for a declaratory judgment, the Court **DENIES** CMBE's Motion for Summary Judgment and **GRANTS** DRNC's Motion for Summary Judgment. CMBE's first claim is **DISMISSED**.

2. As to CMBE's second claim for a declaratory judgment, the Court **GRANTS** CMBE's Motion for Summary Judgment and **DENIES** DRNC's Motion for Summary Judgment. DRNC has failed to come forward with any evidence to support its determination that it has probable cause to believe all Metro students have been or may be subject to abuse or neglect.

3. As to DRNC's first claim for a declaratory judgment, the Court **DENIES** DRNC's Motion for Summary Judgment and **GRANTS** CMBE's Motion for Summary Judgment. DRNC's first claim is **DISMISSED**.

4. As to DRNC's second claim for permanent injunctive relief, the Court **DENIES** DRNC's Motion for Summary Judgment and **GRANTS** CMBE's Motion for Summary Judgment. DRNC's second claim is **DISMISSED**.

Signed: December 30, 2019

Robert J. Conrad, Jr.
United States District Judge